S90H0839. KELLOGG v. ZANT.
(390 SE2d 839)

HUNT, Justice.

In 1987, Larry Grant Lonchar was convicted of three murders and sentenced to death in DeKalb County. His conviction and sentence were affirmed on appeal to this court. *Lonchar v. State*, 258 Ga. 447 (369 SE2d 749) (1988). The U. S. Supreme Court denied

Lonchar's petition for writ of certiorari. *Lonchar v. Georgia,* ____ U. S. ____ (109 SC 818, 102 LE2d 808), rehearing denied, ____ U. S. ____ (109 SC 1332, 103 LE2d 600) (1989). Lonchar sought to forego any further review and on February 26, 1989, petitioned the trial court to "sign the 'death warrant.'"[1] Thereafter, an execution time period was set by the DeKalb Superior Court. See OCGA § 17-10-40.

Shortly before Lonchar's death sentence was scheduled to be carried out, attorney Michael Mears, acting on behalf of Lonchar's sister, Chris Lonchar Kellogg, filed a "next friend" petition for writ of habeas corpus and a motion for stay of execution. After a hearing, the habeas court found that Lonchar was competent and ruled that his sister did not have standing to maintain a "next friend" petition on his behalf. Her petition was dismissed, and the motion for stay of execution was denied.

Kellogg filed an application for certificate of probable cause to this court. On March 29, 1990, we granted a stay of execution to give us time to receive and consider the transcript of the hearing. Having done so, we now dismiss the application and terminate the stay of execution.

1. One of the prerequisites to a "next friend" petition is that the person on whose behalf the "next friend" acts is incompetent. See, e.g., *Franz v. Arkansas,* 754 SW2d 839 (Ark. 1988). A competent person may waive an appeal, and if he does, the "next friend" lacks standing to act on his behalf. *Gilmore v. Utah,* 429 U. S. 1012 (97 SC 436, 50 LE2d 632) (1976).[2]

2. Citing *Hays v. Murphy,* 663 F2d 1004 (10th Cir. 1981), Kellogg contends Lonchar's evaluation was inadequate. Unlike Hays, Lonchar was evaluated individually by Dr. Robert Phillips, a psychiatrist retained on his behalf by Kellogg; by a psychologist, Dr. Robert J. Storms; and by Dr. Everett Kuglar, a psychiatrist and medical director of the Forensic Center at Central State Hospital. In addition, he was given a battery of tests recommended by Dr. Phillips, including an EEG (electroencephalogram), MRI (magnetic resonance image) scan, and a brain scan. Dr. Kuglar interviewed Lonchar on two sepa-

---

[1] His letter to the trial judge indicated that no appeal was pending and that no further appeal would be taken. This is consistent, as the record fully indicates, with Lonchar's attitude toward all review of his conviction. Following his mandatory appeal to this court he "permitted" his attorney at that time to petition the U. S. Supreme Court for a writ of certiorari because of his mother's illness. In July 1989, following the denial of that writ, he wrote to the Attorney General of this state inquiring, in a similar way, as to why the sentence had not been discharged.

[2] The instant case involves waiver of collateral review. As noted previously, Lonchar's conviction and sentence have been reviewed on direct appeal. We do not reach today any question of waiver of direct appeal. See, e.g., OCGA § 17-10-35; *Whitmore v. Arkansas,* ____ U. S. ____ (____ SC ____, ____ LE2d ____) (58 USLW 4495, Case No. 88-7146, decided April 24, 1990).

rate occasions for a total of two and one-half hours and, in addition, reviewed his family history, his criminal history, previous psychiatric reports, the results of intelligence tests, and the results of the battery of tests administered as noted above. His evaluation was not inadequate.

3. Applying the standard set out in *Rees v. Peyton*, 384 U. S. 312, 314 (86 SC 1505, 16 LE2d 583) (1966), the habeas court determined from the evidence that Lonchar "has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation . . ." and that Lonchar is not "suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." Ibid.[3]

Neurological testing failed to show any evidence of traumatic brain damage or any sort of neurological disorder. Although Dr. Kuglar acknowledged Lonchar's poor upbringing (his parents were alcoholics and often quarreled violently), his antisocial tendencies and his long-term depression, his testimony, in our view, forcefully establishes that Lonchar is not psychotic, has normal intelligence, and is competent to decide not to appeal further. The evidence supports the determination by the habeas court.

4. The application for a certificate of probable cause is dismissed and the stay of execution terminated.

*Application dismissed. All the Justices concur.*

DECIDED MAY 2, 1990 —
RECONSIDERATIONS DENIED MAY 16, 1990 AND MAY 23, 1990.

*Michael Mears,* for appellant.
*Michael J. Bowers, Attorney General, Andrew S. Ree,* for appellee.

---

[3] Kellogg does not argue that the *Rees* standard does not apply with respect to competency to waive habeas review. This standard has been applied consistently by the federal courts of appeal. See, e.g., *Wilson v. Lane*, 870 F2d 1250 (7th Cir. 1989); *Smith v. Armontrout*, 812 F2d 1050 (8th Cir. 1987); *Rumbaugh v. Procunier*, 753 F2d 395 (5th Cir. 1985). The *Rees* standard was also referred to by the United States Supreme Court in *Whitmore*, supra at 4500, in connection with the waiver of a direct appeal.