PER CURIAM:
Larry Lonchar opposes all efforts to seek review of his convictions and capital sentence. His sister, Chris Lonchar Kellogg, has filed a 28 U.S.C. § 2254 petition for a writ of habeas corpus as her brother’s next friend, claiming that he is incompetent to make a decision to forego further proceedings. We address the issue of whether Kellogg has met her burden to establish next friend standing to petition the court on her brother’s behalf. We hold that she has not.
FACTUAL AND PROCEDURAL BACKGROUND
In 1986, Larry Lonchar had become several thousand dollars in debt to a bookmaking operation. On October 18, 1986, Lon-char and an accomplice, Mitchell Wells, visited the condominium that housed the operation. They shot each of the four occupants of the condominium and stabbed one person seventeen times in the neck and three times in the chest. Only one victim survived.
*639 On June 25, 1987, Lonchar was convicted in the Superior Court of DeKalb County, Georgia, on three counts of malice murder and one count of aggravated assault. He was sentenced to death for the murders and to twenty-one years imprisonment for the aggravated assault. Lonchar chose not to attend his own trial to the extent the trial court would allow and refused to assist his own attorney. Lonchar v. State, 258 Ga. 447, 369 S.E.2d 749 (1988). After explaining to Lonchar the consequences of his choice not to attend his trial and questioning Lonchar about his decision, the trial court did not require Lonchar to be present at his trial except for jury selection and for purposes of identification. Id., 369 S.E.2d at 752-53.
Upon mandatory appeal, the Georgia Supreme Court affirmed Lonchar’s convictions and sentence and denied his motion for reconsideration. Lonchar v. State, 258 Ga. 447, 369 S.E.2d 749 (1988). The United States Supreme Court denied Lonchar’s petition for a writ of certiorari and his petition for rehearing. Lonchar v. Georgia, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 808, reh’g denied, 489 U.S. 1061, 109 S.Ct. 1332, 103 L.Ed.2d 600 (1989).
The Superior Court of DeKalb County then set Lonchar’s execution date to be during the week of March 23, 1990. On March 21, 1990, Lonchar’s sister, Chris Lonchar Kellogg, filed a petition for a writ of habeas corpus in the Superior Court of Butts County, Georgia, as Lonchar’s next friend, claiming that her brother was incompetent and unable to proceed on his own behalf. At a preliminary hearing that same day, the court questioned Lonchar. He informed the court that he understood that his execution date was imminent, but that he nonetheless strongly opposed his sister’s efforts to seek review of his conviction. The Superior Court of Butts County then ordered an examination of Lonchar. One week later, it held an evidentiary hearing on the issue- of Lonchar’s competence and found Lonchar competent to decide not to proceed with habeas review.
The Georgia Supreme Court stayed the execution so that it could review this competency determination. Holding that the evidence supported the state habeas court’s determination that Lonchar was able to decide rationally among his options, the Georgia Supreme Court denied Kellogg’s application for a certificate of probable cause, terminated its stay and denied Kellogg’s petition for reconsideration. Kellogg v. Zant, 260 Ga. 182, 390 S.E.2d 839 (1990). The United States Supreme Court then denied Kellogg’s petition for a writ of certiorari and her petition ■ for rehearing. Kellogg v. Zant, — U.S. -, 111 S.Ct. 231, 112 L.Ed.2d 191, reh’g denied, — U.S. — 111 S.Ct. 573, 112 L.Ed.2d 579 (1990).
Meanwhile, in the United States District Court for the Northern District of Georgia, Kellogg had filed a petition for a writ of habeas corpus as Lonchar’s next friend. Because the state habeas proceedings were still pending, the district court held that it lacked jurisdiction and instructed the parties to notify it when its jurisdiction was perfected. (R.2-11).
Once the state proceedings were concluded, the district court directed the respondent to address in its motion to dismiss two issues: whether the competency hearing in state court was adequate and whether Lonchar was competent to waive further review of his convictions. (R.2-12). On August 15, 1991, the district court declined to apply a presumption of correctness to the state court proceedings and ordered an evidentiary hearing to consider anew the issue of Larry Lonchar’s competency to decide not to proceed further. (R.2-17). The court expressed concerns about the haste with which the state court hearing was scheduled and conducted; the adequacy of notice to Kellogg’s attorneys; and Kellogg’s ability to present evidence and subpoena witnesses. (Id.)
On November 12, 1991, after permitting discovery, the court began its hearing on the issue of Kellogg’s standing to proceed. Lonchar was present and again stated that he opposed his sister’s efforts to seek a writ of habeas corpus. The court heard the testimony of Dr. Robert Theodore Michael Phillips, a psychiatrist called by Kel *640 logg. Phillips diagnosed Lonchar as suffering from bipolar disorder with depressive self-destructive and suicidal features. Phillips concluded that although Lonchar had the intellectual capacity to understand his legal position and his sentence, Lonchar lacked the ability to make a rational choice among his options because of his mental disorder.
Two psychiatrists called as witnesses by the State did not agree with Dr. Phillips. Dr. Dave M; Davis and Dr. Everett C. Kuglar both diagnosed Lonchar as suffering from dysthymia or depressive neurosis and a personality disorder with antisocial and self-defeating features. Both Davis and Kuglar also testified that Lonchar was able to knowingly, intelligently and voluntarily decide whether or not to seek further review of his convictions.
The district court found the testimony of Drs. Davis and Kuglar more persuasive than that of Dr. Phillips. (R.3-34, District Court Order Granting Motion to Dismiss). Specifically, the court noted that the lack of evidence of manic episodes undermined Phillips’s diagnosis of bipolar disorder and that Phillips’s opinions had changed since his original report. (Id. at 10). Rejecting Phillips’s diagnosis of bipolar disorder, the court accepted Kuglar’s testimony that a person with a personality disorder generally has the ability to make choices regarding his behavior. (Id.) The district court also emphasized the fact that all three psychiatrists agreed in certain areas. All three found Lonchar able to discuss logically and found him unwavering in his decision to forego further review of his conviction. (Id. at 11).
The district court applied the standard of Rees v. Peyton, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), and- concluded that: (1) Lonchar suffers from mild to moderate depression; (2) Lonchar understands his legal position and the options available to him; and (3) Lonchar’s depression does not prevent him from making a rational choice among his options. (R.3-34 at 13-14). Accordingly, the district court held that Kellogg lacked standing to proceed as her brother’s next friend and dismissed her petition for a writ -of habeas corpus on behalf of her brother. It is from this order that Kellogg appeals.
ISSUE ON APPEAL AND CONTENTIONS OF THE PARTIES
The sole issue on appeal is whether the district court erred in determining that Chris Lonchar Kellogg has not met her burden of establishing standing to seek a writ of habeas corpus as her brother’s next friend.
Petitioner Kellogg contends that the district court erred in evaluating Lonchar’s competence to forego further review. She argues that she has standing to proceed on behalf of her brother because her brother’s decision not to proceed is incompetent and involuntary. Respondent Zant maintains that the district court was correct in determining that Larry Lonchar is able to choose rationally among his options and that Kellogg, therefore, lacks standing to proceed in this matter.
STANDARD OF REVIEW
Whether Larry Lonchar is competent to forego collateral review of his conviction is a factual question. Rumbaugh v. Procunier, 753 F.2d 395, 398-99 (5th Cir.), cert. denied, 473 U.S. 919, 105 S.Ct. 3544, 87 L.Ed.2d 668 (1985). We must therefore accept the district court’s findings unless we find them to be clearly erroneous. Fed. R.Civ.P. 52(a); Rumbaugh, 753 F.2d at 398-99; cf. Card v. Singletary, 963 F.2d 1440 (11th Cir.1992) (district court’s determination of defendant’s competency to stand trial reviewed under clearly erroneous standard).
DISCUSSION
Chris Lonchar Kellogg has the burden to establish her standing to proceed on behalf of her brother and thereby to invoke the jurisdiction of the federal courts. See Whitmore v. Arkansas, 495 U.S. 149, 162, 110 S.Ct. 1717, 1727, 109 L.Ed.2d 135 (1990). Article III of the United States Constitution limits the jurisdiction of the *641 federal courts to actual cases and controversies. U.S. Const. art. III, § 2; see Whitmore, 495 U.S. at 154-55, 110 S.Ct. at 1722. By requiring that the person seeking to invoke federal jurisdiction demonstrate a concrete, redressable injury, the doctrine of standing identifies “those disputes which are appropriately resolved through the judicial process.” Id. at 155, 110 S.Ct. at 1722-23.
In habeas corpus cases, courts have long permitted a next friend to proceed on behalf of a prisoner who is unable to seek relief himself. Congress expressly codified this next friend standing in 1948 by allowing for application for a writ of habeas corpus “by the person for whose relief it is intended or by someone acting in his behalf.” 28 U.S.C. § 2242 (1988).
However, next' friend standing is not without limit. In Whitmore v. Arkansas, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990), a death row inmate sought next friend standing to appeal the conviction of another inmate sentenced to death. He claimed standing in his individual capacity and as next friend of the person whose conviction he sought to challenge. After rejecting the claim of individual standing, the Supreme Court detailed the requirements of next friend standing and held that this third party had not met his , burden of proving that the real party in interest was unable to prosecute the action himself. Id. at 163-166, 110 S.Ct. at 1727-29.
The Court stressed that “ ‘next friend’ standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another.” Id. at 163, 110 S.Ct. at 1727. The would-be next friend must first prove that the real party in interest cannot pursue his own cause due to some disability such as mental incompetence or lack of access to court. Id. at 163-65, 110 S.Ct. at 1727-1728. Then, the next friend must show some relationship or other evidence that would suggest that the next friend is truly dedicated to the interests of the real party in interest. Id. at 163-64, 110 S.Ct. at 1727. Ultimately, “[t]he burden is on the ‘next friend’ clearly to establish the propriety of [her] status, and thereby justify the jurisdiction of the. court.” Id. at 164, 110 S.Ct. at 1727.
Although Whitmore involved next friend standing to pursue a direct appeal, the Court in Whitmore based its decision entirely upon next friend standing as it has developed under habeas corpus law. ' See id. at 164-65, 110 S.Ct. at 1728. The logic of Whitmore, therefore, applies where, as here, a would-be next friend seeks a writ of habeas corpus on behalf of another. In fact, our precedent has applied these same principles in the context of next friend standing to seek a habeas writ. See Weber v. Garza, 570 F.2d 511 (5th Cir.1978).[1]
The district court held and no one disputes that Kellogg, as Lonchar’s sister, is sufficiently dedicated to the interests of her brother. (R.3-34 at 6). However, Kellogg must also prove that Lonchar is unable to litigate his own cause. She argues that Lonchar is mentally incompetent to decide not to proceed and that she, therefore, should be allowed to proceed in his stead.
Competency to forego further legal proceedings depends on whether the person whose competency is in question “has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises.” Rees v. Peyton, 384 U.S. 312, 314, 86 S.Ct. 1505, 1506, 16 L.Ed.2d 583 (1966). This analysis involves a determination of (1) whether that person suffers from a mental disease, disorder, or defect; (2) whether a mental disease, disorder, or defect prevents that person from understanding his legal position and the options available to him; and (3) whether a mental disease, disorder, or defect prevents that person from making a rational choice among his options. See Rumbaugh v. Pro- *642 cunier, 753 F.2d 395, 398 (5th Cir.), cert. denied, 473 U.S. 919, 105 S.Ct. 3544, 87 L.Ed.2d 668 (1985).
Applying this standard, the district court found that Larry Lonchar is competent to forego further review of his convictions and sentence. We hold that this determination is not clearly erroneous. The court found that Lonchar suffers from a mental disorder: mild to moderate depression. Both Dr. Davis and Dr. Kuglar diagnosed Lonchar as suffering from dysthymia or depressive neurosis and a personality disorder with antisocial and self-defeating features. Dr. Phillips, on the other hand, diagnosed Lonchar as suffering from bipolar disorder. However, Phillips could not point to any specific instances in Lonchar’s record indicating manic episodes characteristic of someone suffering from bipolar disorder. Both Davis and Kuglar testified that they found no evidence of such manic episodes in Lonchar’s medical records. The testimony of these psychiatrists clearly supports the district court’s finding that Lonchar suffered from depression.
The court also found that Lonchar was able to understand his legal position and the options available to him. Upon this issue, all three psychiatrists agreed. Kellogg’s own expert witness, Phillips, testified that Lonchar
has the intellectual capacity at this point in time and the intellect to recognize what his legal position is. This individual knows what he has been charged with. He recognizes the penalty that has been handed down and what the ultimate outcome of that penalty will be if it in fact is imposed upon him and he is executed.
(R.4 at 147). Both Davis and Kuglar added that Lonchar understood his choices and the consequences of not pursuing review of his conviction.
Perhaps the most persuasive evidence that Lonchar understands his legal position is his own testimony. Questioned by the court twice during the competency hearing, Lonchar exhibited a basic understanding of the habeas proceedings, persisted in his opposition to further review of his convictions, and stated that he understood that without further proceedings he would be executed. Nothing in the record indicates that the district court clearly erred in finding that Lonchar understands both his legal position and the options available to him.
The district court concluded that Lonchar could make a rational choice among his options. The testimony of Davis and Kug-lar supports this finding. Davis testified that Lonchar’s judgment and insight were good. In Davis’s opinion, Lonchar understood not only his own position, but also his sister’s position in wanting to pursue habe-as review. Lonchar, according to Davis, had considered his options and the quality of life he had in prison and had decided not to oppose his sentence. Davis opined that Lonchar had the capacity to appreciate his position and to make a rational choice regarding further litigation.
Kuglar, too, traced Lonchar’s thought process. In Kuglar’s opinion, Lonchar understood his choices, understood the finality of his sentence and had the ability to weigh his options and to choose rationally among them. Kuglar testified that Lonc-har’s disorder did not interfere with his ability to make a rational decision to abandon review of his convictions.
Only Phillips concluded that Lonchar’s psychiatric illness prevented him from making a rational choice among his options. However, Phillips’s conclusion was based in large part on his diagnosis of bipolar disorder, a diagnosis not supported by evidence of manic episodes and discredited by the district court. Apart from that diagnosis, Phillips did not testify as to any other specific evidence that would indicate that Lonchar’s decision was anything other than rational.
The record supports the district court’s finding that Larry Lonchar is competent to forego further review of his convictions and his sentence. Psychiatric testimony indicates that Lonchar suffers from depression, a disorder which interferes with neither his ability to understand his legal position and his options nor his ability to choose rationally among those options. Accordingly, we hold that the district court did not clearly err in finding Larry Lonchar competent.
*643 We also reject Kellogg’s contention that she has standing to proceed as her brother’s next friend because the state has withheld medical treatment from Lonchar and thereby rendered his decision involuntary. There is no evidence in the record to indicate that any state official has denied Lonc-har needed medical treatment. In fact, the record indicates that on several occasions Lonchar has himself refused offered treatment. (R.4 at 37, 81).
Petitioner Kellogg simply has not met her burden to establish standing to seek this writ. Supreme Court cases indicate that it is possible for one convicted and sentenced to death to forego further review of his conviction and sentence. See, e.g., Whitmore v. Arkansas, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); Gilmore v. Utah, 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976). A third party can seek review of that conviction and sentence only when she can prove that the real party in interest is unable to litigate his own cause. This, Petitioner Kellogg has not done.
We hold, therefore, that the district court did not err in finding that Kellogg lacks standing to proceed as her brother’s next friend. We affirm the district court’s order dismissing Kellogg’s petition.
AFFIRMED.

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.